[Cite as *State v. Sutherland*, 2021-Ohio-2433.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2021-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-91 |
| | : | |
| JEFFREY SCOTT SUTHERLAND | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of July, 2021.

. . . . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. No. 0020615 & DEBORAH S. QUIGLEY, Atty. Reg. No. 0055455, Darke County Prosecutor's Office, Appellate Division, 504 South Broadway Street, Greenville, Ohio 45331
      Attorney for Plaintiff-Appellant

JOSEPH C. PATITUCE, Atty. Reg. No. 0081384 & MEGAN M. PATITUCE, Atty. Reg. No. 0081064, 16855 Foltz Industrial Parkway, Strongsville, Ohio 44149
      Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Pursuant to Crim.R. 12(K), appellant State of Ohio appeals from the trial court's pretrial decision excluding from trial what it characterized as "other acts" evidence. The court found the evidence (in the form of Google searches found on Defendant-Appellee Jeffrey Scott Sutherland's phone) to be incongruous with Evid.R. 404(B) and unfairly prejudicial to Sutherland. For the reasons that follow, we will reverse the trial court's decision in part and sustain it in part, and we will remand the matter to the trial court for further proceedings in light of our opinion.

## I.    Facts and Procedural History

{¶ 2} On April 20, 2020, a child victim ("CV") disclosed allegations of sexual abuse by Sutherland. The following day, Detective Prickett of the Darke County Sheriff's Office seized and searched Sutherland's cell phone pursuant to a warrant.

{¶ 3} On June 26, 2020, Sutherland was indicted on three counts of rape of a victim under the age of ten, felonies of the first degree, and one count of disseminating matter harmful to a juvenile, a third-degree felony. Sutherland entered a not guilty plea, and the case was set for trial on March 29, 2021.

{¶ 4} On March 11, 2021, the State filed notice that it intended to introduce "other acts" evidence pursuant to Evid.R. 404(B) and requested a jury instruction for "consciousness of guilt." The State intended to offer evidence of Google searches found on Sutherland's phone stemming from April 21, 2020, the day after CV disclosed the alleged abuse. While the record is silent on the matter, it appears from the parties' briefs that Sutherland spoke with deputies that day as well. Sutherland filed a motion in opposition on March 17, 2021.

{¶ 5} Before the jury was sworn in on March 29, 2021, the trial court conducted a hearing on the State's motion. The State proffered that it would introduce evidence and testimony from a Bureau of Criminal Investigation forensic expert that would show specific Google searches found on Sutherland's phone the day after CV disclosed the alleged abuse. The Google searches were as follows: (1) "what if I'm accused of touching a child," (2) "how long to arrest someone," (3) "How long does skin DNA last," (4) "detecting the presence of male DNA in cases of sexual assault without ejaculation," (5) "how long does skin DNA last in a woman's body," (6) "how long can DNA last in a vagina," (7) "detecting seminal fluid and saliva in [sexual assault] kits," (8) "detecting saliva inside a vagina," and (9) "digital vaginal DNA life." Hearing Tr. at 194. The State's evidence, however, was limited to search terms; the results of the searches were not disclosed.

{¶ 6} After a lengthy back-and-forth between the parties and the trial court, the court orally disallowed the State's use of the Google searches at trial and then issued a written decision two days later. The State, for its part, gave notice of its intent to appeal the court's ruling under Crim.R. 12, the trial did not proceed, and the State's appeal was filed on April 2, 2021. The State raises two assignments of error.

II.     Admissibility of Google searches

{¶ 7} In its first assignment of error, the State argues that the trial court misinterpreted *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, in regard to the admissibility of purported Evid.R. 404(B) "other acts" evidence. We conclude that the Google searches were not "other acts" evidence and overrule the assignment of error. In its second assignment of error, the State contends that the trial court abused its discretion when it excluded the Google searches. For reasons other than

those proposed by the State, we sustain the assignment of error in part and overrule it in part.

### A. The Google search results are not Evid.R. 404(B) evidence

**{¶ 8}** "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), citing 1 *Underhill's Criminal Evidence*, Section 205, 595 (6th Ed.1973). Evid.R. 404 is the embodiment of that principle.

**{¶ 9}** Evid.R. 404(A) states: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Evid.R. 404(A). In other words, it does not necessarily follow that because a person committed a crime in the past, he or she committed *this* crime.

**{¶ 10}** As with many things in the law, however, there are exceptions. Evid.R. 404(B) provides that "other acts" or "propensity" evidence is sometimes admissible for other purposes such as proof of motive, opportunity, preparation, plan, intent, absence of mistake, identity, or knowledge." Evid.R. 404(B). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Hartman* at ¶ 22.

**{¶ 11}** In this case, the State argues that the Google searches should be admissible as "other acts" evidence under Evid.R. 404(B) and points to the "knowledge"

exception as the vehicle for admittance. We disagree.

{¶ 12} Black's Law Dictionary defines knowledge as "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Black's Law Dictionary* (11th Ed.2019). The Ohio Revised Code provides a definition as well: "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). While neither of these definitions are particularly helpful here, the caselaw on the "knowledge" exception to Evid.R. 404(B) is.

{¶ 13} In *State v. Snyder*, 3d Dist. Logan No. 8-03-04, 2003-Ohio-5134, the defendant was charged with complicity to commit burglary after a house was broken into and valuables were stolen from a gun cabinet in the master bedroom. To help prove its case, the State submitted evidence that the defendant had previously burglarized the house and admitted to knowledge of the layout of the victim's home and the location of the gun safe. The Third District wrote:

> * * * In the current case, the boys who entered the residence * * * went directly to the master bedroom where they opened the gun cabinet and took the valuable coin collection that was located within. The majority of the residence was left undisturbed and, as evidence and testimony at trial showed, the boys knew where they were going when they entered the residence. The testimony of Officer Kenner relaying Joshua Snyder's knowledge of the residence and the location of valuables within the residence was relevant to the issue of proving complicity to commit burglary in the current case. * * *

*Id.* at ¶ 14.

{¶ 14}  The court ultimately held that the "other acts" evidence was appropriate because it showed that the defendant's prior experience in the house gave him the knowledge needed to find the valuables in the gun cabinet without disturbing anything else.

{¶ 15} In *State v. Dickson,* 5th Dist. Stark No. 1994 CA 00152, 1995 WL 156286 (Feb. 6, 1995), the defendant was convicted of criminal trespass. The State sought, over defense objection, to admit evidence that the defendant had four previous instances of criminal trespass at this particular apartment complex to demonstrate he had knowledge that he was not to be on the premises. Both the trial court and appellate court found that Evid.R. 404(B) was an appropriate vehicle to introduce the knowledge evidence. *See also United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir.1998) (evidence of the defendant's prior employment at a fraudulent telemarketing company was admissible to demonstrate defendant knew current telemarketing company was engaged in fraud).

{¶ 16} The archetypal Evid.R. 404(B) "knowledge" cases, including the just-cited examples, are different than this case. In those cases, the accused had the knowledge and *then* committed the crime. For the "knowledge" exception to work in a hypothetical analogous instance, the accused would have to make the Google searches, find out the information, and then do the illicit act. In Sutherland's case, if the State's theory is to be followed, he committed the crime and *then* had the knowledge. While that seems to be a subtle difference on the surface, the distinction is important, and it takes this scenario out of the Evid.R. 404(B) realm. To the extent that the State and trial court used an Evid.R. 404(B) analysis to reach their conclusions, we find that they were mistaken. The Google

searches were not "other acts" evidence under Evid.R. 404(B).

{¶ 17} In the alternative, the State contends that the Google searches should be construed as "consciousness of guilt" evidence. Misconduct establishing the defendant's consciousness of guilt is admissible. One court has even stated that this type of evidence is "second only to a confession in terms of probative value." *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir.1995).

{¶ 18} Courts have determined that when an accused takes an affirmative step to conceal conduct or avoid consequences of his or her illicit dealings, that person has demonstrated "consciousness of guilt." For instance, the Ohio Supreme Court has commented that "today [it is] universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Williams*, 79 Ohio St.3d 1, 11, 679 N.E.2d 646, 657 (1997), quoting *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969), *vacated on other grounds*, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750. The State may also ask for a jury instruction on "consciousness of guilt." *State v. St. John*, 2d Dist. Montgomery No. 27988, 2019-Ohio-650, ¶ 111.

{¶ 19} The State argues that Sutherland's Google searches after the alleged crime were clear examples of "consciousness of guilt," and it points to *State v. Petkovic*, 8th Dist. Cuyahoga No. 97548, 2012-Ohio-4050, to buttress that claim. In that factually-similar case, the defendant was accused by a minor of rape and other sexual offenses. After speaking with law enforcement (but before he was charged), the defendant made the following internet searches on his home computer: "age of consent," "sex laws,"

"internet crimes," "spousal privilege," and "deleting email." The evidence was admitted and during closing arguments, the prosecutor asked the jury, "If [defendant] didn't think he did anything wrong, why is he going home and looking at those websites?" Petkovic was convicted, and on appeal he challenged the admissibility of the searches. The appeals court affirmed the conviction.

{¶ 20} The State reads the affirmance in *Petkovic* as an endorsement of its position that Google searches conducted after an alleged crime are clear examples of "consciousness of guilt" evidence. We see *Petkovic* differently. While the evidence of the internet search(es) was admitted into evidence in *Petkovic*, it was not, at any point, objected to by the defense. The prosecutor's closing argument comments were not objected to either. Without objections at the trial court level, the reviewing court was required to decide the issue under a plain error standard, essentially precluding the Eighth District from deciding the question of the propriety of the internet search evidence on the merits. *Petkovic*, in our view, does not endorse the State's position.

{¶ 21} The Google queries in this case do not fall neatly into the typical categories of "consciousness of guilt" evidence. Instead, we conclude they are properly viewed as circumstantial evidence – evidence that is based on inference. *Black's Law Dictionary* (11th Ed.2019). This type of evidence "is as inherently probative as direct evidence," *State v. Winton*, 2d Dist. Montgomery No. 27043, 2017-Ohio-6908, ¶ 23, and an accused may be convicted wholly on that basis. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1998).

{¶ 22} We have determined that the Google searches were neither "other acts" evidence under Evid.R. 404(B) nor "consciousness of guilt" evidence. Instead, we find

them to be circumstantial evidence. We must next decide whether the trial court erred when it excluded the evidence from trial.

B. The Google search results were relevant and not unfairly prejudicial

{¶ 23} "A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Hunt*, 2d Dist. Darke No. 2018-CA-9, 2019-Ohio-2352, ¶ 27. A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *Id.*

{¶ 24} When engaging in this gatekeeper capacity, the trial court must determine if potential evidence is relevant. Evid.R. 401 defines "relevant" evidence. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. Generally, relevant evidence is admissible. Evid.R. 402.

{¶ 25} In its written decision excluding the Google search evidence, the trial court did not make a determination of the evidence's relevance; instead, it skipped ahead to the next step in the analysis – determining the level of prejudice. We find, however, that the evidence was relevant. Overall, these Google queries made the State's contention that Sutherland sexually abused CV more probable than without them. However, some of the Google results were more probative than others.

{¶ 26} Queries such as: "What if I'm accused of touching a child?" "How long to arrest someone?" are minimally probative. As Sutherland argues in his brief, these Google searches could realistically be nothing more than a person trying to find out more information about topics that were discussed during his conversation with detectives. The

probative value of these two queries was minimal and rendered them not relevant, thus inadmissible. The trial court did not err in excluding those searches.

{¶ 27} The remaining searches, however, were much more specific and probative. Googling topics such as "Detecting the presence of male DNA in cases of sexual assault without ejaculation," "Detecting seminal fluid and saliva in sexual assault kits," "Detecting saliva inside a vagina," "Digital vaginal DNA life," "How long does skin DNA last in a woman's body?" "How long does skin DNA last?" and "How long can DNA last in a vagina?" potentially revealed significantly more information than the innocuous searches mentioned above. A jury could have reasonably found those queries, as the State posits, to be evidence of guilt, or as Evid.R. 401 puts it, the searches could have made a "fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. These Google searches are probative and relevant.

{¶ 28} Finding that evidence is relevant is not the end of the analysis, however. A trial court may still exclude relevant evidence if its probative value is *substantially* outweighed by the danger of unfair prejudice. Evid.R. 403. "Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to the litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.' Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890. If the evidence arouses the emotions or sympathies of the jury, evokes a sense of horror, or appeals to an instinct to punish, the evidence is likely unfairly prejudicial and should be excluded. *Id.*

{¶ 29} "[W]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22. Courts have characterized Evid.R. 403 as an "extraordinary remedy" which should only be used sparingly because it permits the exclusion of otherwise relevant evidence." *United States v. Meester*, 762 F.2d 867, 875 (11th Cir.1985). The major function of Evid.R. 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.1979).

{¶ 30} Sutherland argues that the danger for prejudice outweighs any probative value because the State could use the Google search evidence as "stand-alone proof of guilt." That argument would make sense in an Evid.R. 404(B) scenario where the "other acts" evidence were more "icing on the cake" than the "main course," but we have already held that the Google searches are not "other acts" evidence, but rather circumstantial evidence which is treated the same as direct evidence. Sutherland also underplays the probative value and relevance of many of the searches. Only two of the nine Google searches, we believe, could be fairly characterized as (as Sutherland puts it) "seeking to educate himself on what he was interrogated upon." The remaining seven were much more probative.

{¶ 31} To be sure, the Google searches were prejudicial, just like most evidence presented by the State in a criminal trial, but they were not *unfairly* prejudicial. The Google searches did not rise to the level of evoking a sense of horror in a juror or igniting an instinct to punish. Unfairly prejudicial evidence "appeals to the jury's emotions rather than

intellect," Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3, and we do not have that here. The balance should be struck in favor of admission because the dangers associated with the potentially inflammatory evidence must substantially outweigh its probative value. *Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, 105 N.E.3d 612, ¶ 36 (2d Dist.).

**{¶ 32}** The seven probative and relevant Google searches should be admitted due to their importance to the case. While prosecutorial need alone does not mean probative value outweighs prejudice, "the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded." *United States v. King*, 713 F.2d 627, 631 (11th Cir.1983) (internal citations omitted). *See United States v. Frick*, 588 F.2d 531, 537 (5th Cir.1979) (without other evidence that the defendants were part of the conspiracy, not only was the government's need high, but the evidence was very probative). In this case, both parties concede that Google search evidence was critical to the State's case. In fact, the prosecutor admitted during the hearing on the motion that denying the motion "will cripple my case." The essential nature of the evidence increased its already-high probative value and militated in favor of admittance.

**{¶ 33}** We conclude that there were seven Google searches that were relevant and the probative value of which was not substantially outweighed by the danger of unfair prejudice: "Detecting the presence of male DNA in cases of sexual assault without ejaculation," "Detecting seminal fluid and saliva in sexual assault kits," "Detecting saliva inside a vagina," "Digital vaginal DNA life," "How long does skin DNA last in a woman's body?," "How long does skin DNA last?," and "How long can DNA last in a vagina?"

However, the trial court is granted broad discretion in evidentiary matters and we can only disturb its decision if it is unreasonable, arbitrary, or unconscionable. *State v. Malloy*, 2d Dist. Clark No. 11CA0021, 2012-Ohio-2664, ¶ 24. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*.

{¶ 34} While the trial court has broad discretion, it only goes so far. If the trial court committed a legal error in its ruling, "that ruling necessarily constitutes an abuse of discretion, since the trial court had no discretion to commit a legal error." *State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 72 (2d Dist.). Most of the trial court's analysis is based on the faulty Evid.R. 404(B) reasoning; the Evid.R. 403 analysis was essentially a fallback argument that consisted of two sentences and a block quote. Notably, a line from the block quote stated that "the trial court's analysis under this rule should be robust[.]"

{¶ 35} The seven Google searches cited in paragraph 33 should not have been excluded because they were relevant and their probative value outweighed the danger of unfair prejudice. As to those, the State's second assignment of error is sustained. The remaining queries, cited in paragraph 26, had little relevance or probative value, and were properly excluded from trial. The State's second assignment of error is overruled as to those.

## III.     Conclusion

{¶ 36} The trial court abused its discretion when it excluded the following Google searches from trial: "Detecting the presence of male DNA in cases of sexual assault without ejaculation," "Detecting seminal fluid and saliva in sexual assault kits," "Detecting

saliva inside a vagina," "Digital vaginal DNA life," "How long does skin DNA last in a woman's body?," "How long does skin DNA last?," and "How long can DNA last in a vagina?" The trial court's decision will be reversed in part and affirmed in part, and the case will be remanded to the trial court to proceed in accordance with this opinion.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

R. Kelly Ormsby, III
Deborah S. Quigley
Joseph C. Patituce
Megan M. Patituce
Hon. Jonathan P. Hein